UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61599-CIV-COHN/SELTZER

DEL ISTMO ASSURANCE CORP.,
a Panamanian company,

      Plaintiff,

vs.

MELETIOS P. PLATON a/k/a TED PLATON,
individually and ITALKITCHEN INTERNATIONAL,
Inc., a Florida corporation,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on Defendant Italkitchen International Inc.'s

Motion to Dismiss Plaintiff's Complaint [DE 11] ("Italkitchen Motion") and Defendant Ted

Platon's Motion to Dismiss Plaintiff's Complaint [DE 16] ("Platon Motion") (collectively

"Motions to Dismiss").  The Court has carefully considered the Motions to Dismiss,

Plaintiff's Oppositions [DE 21, 32] ("Italkitchen Opp." and "Platon Opp."), Defendant

Italkitchen International, Inc.'s Reply Memorandum to Plaintiff's Response [DE 34]

("Italkitchen Reply"), Defendant Ted Platon's Reply Memorandum to Plaintiff's

Response [DE 45] ("Platon Reply"), the supporting materials submitted by the parties,

and is otherwise advised in the premises.

### I. BACKGROUND

Plaintiff Del Istmo Assurance Corp. ("Plaintiff") filed the instant suit against

Defendants Italkitchen International, Inc. ("Italkitchen") and Meletios P. Platon a/k/a Ted

Platon ("Platon") (collectively "Defendants") on July 19, 2011.  See Complaint [DE 1].

Plaintiff is a corporation organized under the laws of the Republic of Panama and the successor in interest to American Assurance Corp.  Id. ¶ 1.  Platon is a resident of Miami-Dade County, Florida.  Id. ¶ 2.  Italkitchen is a Florida corporation with its principal place of business in Miami-Dade County, Florida.  Id. ¶ 3. According to the Complaint, Platon, through his companies Italkitchen and Eurogroup International Panama, Inc. ("Eurogroup"), specializes in custom kitchens, cabinets, doors, and other wood-based fixtures.  Id. ¶¶ 6-7.  In or around December 2008, Platon, through Eurogroup, entered four contracts with Opcorp-Arsesa International, Inc., a Panamanian corporation, to install kitchens, doors, carpentry, and other fixtures at the Trump Ocean Club International Hotel & Tower development (the "Opcorp contracts"). Id. ¶ 12.  The Opcorp contracts provided that Opcorp-Arsesa International, Inc. would make advance payments to Eurogroup.  Id. ¶ 13.  In exchange, Eurogroup was required to place these payments in trust and obtain prepayment bonds to ensure the funds.  Id.

In early 2009, Platon met with Plaintiff's representatives to obtain the necessary prepayment bonds.  Id. ¶ 17.  Based on representations made by Mr. Platon at a March 4, 2009 meeting and his execution of an indemnity agreement/personal guaranty in Plaintiff's favor, Plaintiff agreed to underwrite the bonds.  Id. ¶¶ 18, 24.  Thereafter, on March 6, 2009, Eurogroup executed a trust instrument to comply with the Opcorp contracts which named Plaintiff as the beneficiary.  Id. ¶ 14.  Additionally, on August 30, 2009, Platon, on behalf of Italkitchen, executed an indemnity agreement in Plaintiff's favor which required Italkitchen to indemnify Plaintiff for the bonds.  Id. ¶ 25.

Plaintiff alleges that sometime starting in or around March 2009, Platon began to systematically withdraw money from the trust which he used to pay other debts rather

2

than third-party suppliers under the Opcorp contracts. Id. ¶ 27. Because Platon did not pay the third-party suppliers, Plaintiff was required, pursuant to the bonds it underwrote, to pay the third-party suppliers and cover all expenses related to shipping and importation of the materials needed to complete the Trump Ocean Club International Hotel & Tower development. Id. ¶ 30. Eurogroup later delayed its performance at the development, necessitating that Plaintiff pay $900,000 to complete Eurogroup's work. Id. ¶¶ 33, 36. Plaintiff filed the instant suit against Platon and Italkitchen when they failed to reimburse Plaintiff under the personal guaranty and indemnity agreements. Id. ¶¶ 39, 42. The Complaint raises separate breach of contract claims against Platon and Italkitchen related to breach of the indemnity agreements and a fraud claim against Platon for misrepresentations he allegedly made to induce Plaintiff to underwrite the bonds. Id. ¶¶ 43-64.

Defendants separately filed motions to dismiss. See DE 11, 16. Both Motions to Dismiss allege that the Complaint should be dismissed under the doctrine of *forum non conveniens* because the suit should be resolved in Panama. Italkitchen Motion at 1; Platon Motion at 1. Additionally, both Motions to Dismiss contend that the Complaint should be dismissed for failure to state a claim because the documents attached to the Complaint preclude recovery as a matter of law and Plaintiff has failed to properly allege standing. Italkitchen Motion at 2; Platon Motion at 2. Finally, Platon argues that Plaintiff's fraud claim should be dismissed because Plaintiff has failed to state a claim for fraud and the economic loss rule bars such a claim. Platon Motion at 2.

3

## II. DISCUSSION

### A. Legal Standard For *Forum Non Conveniens*.

Under the doctrine of *forum non conveniens*, a federal district court may dismiss an action if a foreign court is a more appropriate and convenient forum for adjudicating the matter. Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 425 (2007). To obtain dismissal under the doctrine of *forum non conveniens,* the moving party must demonstrate (1) an adequate alternate forum is available; (2) the public and private factors weigh in favor of dismissal; and (3) the plaintiff can reinstate its suit in the alternative forum without undue inconvenience or prejudice. Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir. 2011). Although ordinarily there is a strong presumption in favor of a plaintiff's choice of forum, where, as here, a plaintiff chooses a forum that is not its home forum, this presumption "applies with less force." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). After reviewing the relevant law and submissions of all parties, the Court concludes that dismissal for *forum non conveniens* is warranted.[1]

### B. Panama is an Adequate and Available Forum.

Before granting a motion to dismiss for *forum non conveniens*, the Court must consider both whether an alternate forum is adequate and available. Tazoe, 631 F.3d at 1330. An alternative forum is available when the foreign court can assert jurisdiction over the litigation. Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001).

---

[1]     Because the Court grants Defendants' Motions to Dismiss based on *forum non conveniens*, the Court has not considered Defendants' other arguments for dismissal of Plaintiff's Complaint.

4

Generally, an alternative forum is available when the defendant is amenable to process in the other jurisdiction. <u>Aldana v. Del Monte Fresh Produce N.A., Inc.</u>, 578 F.3d 1283, 1290 (11th Cir. 2009) (internal citations and quotations omitted).  "[A]n adequate forum need not be a perfect forum."  <u>Id.</u> (internal citations and quotations omitted).  A remedy is inadequate when it amounts to "no remedy at all."  <u>Piper Aircraft Co.</u>, 454 U.S. at 254.  The Eleventh Circuit has elaborated that it is "only in rare circumstances where the remedy offered by the other forum is clearly unsatisfactory" that an alternative forum will be considered inadequate. <u>Aldana</u>, 578 F. 3d at 1290 (internal citations and quotations omitted).

Defendant Platon contends that "Panama is a civil law jurisdiction with an impartial court system and the civil code of Panama recognizes all of the causes of action alleged in Plaintiff's Complaint."  Platon Motion at 8.  In support, Platon cites the affidavit of Panamanian lawyer Rolando Villalobos who avers that Panamanian courts have jurisdiction over this matter.  Affidavit of Rolando Villalobos in Support of Defendants' Motions to Dismiss for Forum Non Conveniens [DE 16-1] ("Villalobos Aff.") ¶ 8.[2]  Defendant Italkitchen similarly argues that Panama provides an available and adequate forum.  Italkitchen Motion at 9.

In opposition, Plaintiff contends that Panama is not an adequate forum because

---

[2]     Defendants filed a motion for leave to supplement their Motions to Dismiss with additional supporting evidence and information.  <u>See</u> DE 38.  This Court denied that motion on the grounds that Defendants were attempting to correct deficiencies in their motions to dismiss with evidence and information that could and should have been filed earlier.  <u>See</u> Order Denying Defendants' Motion for Leave to Supplement Motions to Dismiss with Additional Supporting Evidence and Information [DE 42].  Thus, the Affidavit of Rolando Villalobos [DE 16-1] applies solely to Platon's motion to dismiss.

if the case is dismissed on *forum non conveniens* grounds, Panama law precludes

Plaintiff from reinstating its suit against the Defendants in Panama.  Platon Opp. at 9.

According to Plaintiff's legal expert Octavio Del Real, Article 1421-J of the Panama

Rules of Civil Procedure provides that:

> For any legal proceeding under this Chapter [Panamanian]
> judges are not competent [to hear the case] if the complaint
> or the action being commenced in [Panama] has been
> previously dismissed or denied by a foreign judge under the
> application of *forum non conveniens*.  In these cases, judges
> should dismiss or not recognize the complaint or demand on
> grounds of constitutional or preemptive jurisdiction.

Declaration of Octavio Del Real, submitted in support of Plaintiff's Opposition to

Platon's Motion to Dismiss [DE 33] ("Del Real Decl.") ¶ 6.  Based on this provision, Del

Real concludes that "if the Action were to be dismissed by the United States Federal

Court on *forum non conveniens* grounds, the courts [in] Panama would not be an

available forum for Plaintiff to reinstate this action as a matter of Panama law."  Id.

In his Reply, Platon contends that this Court need not be bound by Article 1421-

J because "Panama law does not trump United States law."  Platon Reply at 1-2.

Article 1421-J is a "blocking statute," enacted "to permit foreign plaintiffs, sanctioned by

their national governments, to take advantage of the U.S. judicial system without regard

to the burden placed on its courts or taxpayers."  Jena A. Sold, *Inappropriate Forum or

Inappropriate Law? A Choice-of-Law Solution to the Jurisdictional Standoff Between the

United States and Latin America*, 60 Emory L.J. 1437, 1466 (2011).  The Florida District

Court of Appeal has addressed the effect of Article 1421-J on dismissal of actions for

*forum non conveniens*.  In The Scotts Company v. Hacienda Loma Linda, 942 So. 2d.

900 (Fla. Dist. Ct. App. 2006), the Third District Court of Appeal reversed the lower court's denial of a defendant's motion to dismiss for *forum non conveniens*, holding that Panama was an adequate, alternate forum available to resolve the parties' dispute.[3] As in this case, a Panamanian plaintiff sued an American defendant in the United States for injuries that allegedly occurred in Panama.  The Scotts Co., 942 So. 2d at 902. Although the court concluded that Panama was an available forum, it retained "jurisdiction in the event the Panama court does not entertain the case based on pre-emption."  Id. at 903.

After the case was dismissed, the Panamanian plaintiff reinstated its suit in Florida circuit court on the basis that the Panamanian court had declined jurisdiction pursuant to Article 1421-J.  The Scotts Co. v. Hacienda Loma Linda, 2 So. 3d 1013, 1015 (Fla. Dist. Ct. App. 2009).  After the defendant appealed, the Third District Court of Appeal ordered that the circuit court dismiss the case.  Id. at 1918.  The court held that "the case plainly belongs in Panama" and United States' "courts cannot be compelled by other countries' courts and lawmakers to resolve cases that should be determined in those countries."  Id. at 1017.  Thus, "[i]f the foreign country chooses to turn away its citizen's lawsuit for damages suffered in that very country," there was no reason for United States' resources to be devoted to hearing the matter.  Id. at 1018.

Other courts, both state and federal, have refused to recognize foreign laws that purport to make the home forum unavailable because of a prior U.S. filing.  See Morales v. Ford Motor Co., 313 F. Supp. 2d 672, 676 (S.D. Tex. 2004) (finding

---

[3]      The *forum non conveniens* analysis the Florida court applied is identical to the analysis that federal courts apply.  Aldana, 578 F.3d at 1289.

7

Venezuela an adequate, alternate forum because defendant consented to jurisdiction there); Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534, 546 (S.D.N.Y. 2001) (finding argument that Ecuador courts would deny plaintiff jurisdiction doubtful, but conditioning dismissal as a safeguard); Paulownia Plantations De Pan. Corp. v. Rajamannan, 793 N.W. 2d 128, 134-35 (Minn. 2009) (affirming Panama as an adequate and available public forum despite the passage of Article 1421-J).

Furthermore, Platon contends, in the Affidavit of Rolando Villalobos on Panamanian Witnesses and Evidence [DE 45-3], attached as Exhibit C to Platon's Reply ("Villalobos Evidence Aff."),[4] that there is already a case pending in Panama between Opcorp-Arsesa International, Inc. and Eurogroup, another company operated by Defendant Platon. Villalobos Evidence Aff. ¶ 4. According to Villalobos, this pending litigation "challenges the validity of the underlying obligations allegedly secured

---

[4]     After the Court denied Defendants' motion for leave to supplement, Platon attached the Affidavit of Ted Platon and Italkitchen Consenting to Jurisdiction in the Republic of Panama [DE 45-2], the Affidavit of Rolando Villalobos on Witnesses and Evidence [DE 45-3], and a supplemental Affidavit of Rolando Villalobos [DE 45-1] to his reply memorandum. Plaintiff filed a motion for leave to file a surreply on October 25, 2011, arguing that it should be allowed to file a surreply because Platon had submitted two of the same affidavits that they court ruled were inadmissible in the motion to supplement. See DE 46. Southern District of Florida Local Rule 7.1 states that "[t]he movant may serve a reply memorandum with affidavits, declarations, or other materials provided that all such materials are strictly limited to rebuttal of matters raised in the opposing memorandum." S.D. Fla. L.R. 7.1(c)(3). Thus, although the court found that it was improper to supplement the underlying motions to dismiss with these affidavits, because the affidavits rebut issues that Plaintiff raised in its opposition, Platon is permitted to submit the affidavits with his reply memorandum. See Morrison v. Quality Transps. Servs., Inc., 474 F. Supp. 2d 1303, 1313-14 (S.D. Fla. 2007) (denying motion to strike affidavits attached to reply memorandum because the affidavits rebutted issues raised in opposition). Plaintiff is not entitled to a surreply merely because Platon filed affidavits rebutting issues raised in Plaintiff's opposition.

by the Indemnity Agreements." Villalobos Aff. ¶ 12. Villalobos asserts that this matter could be consolidated with this existing case and that Defendants are likely to implead Opcorp-Arsesa International, Inc. to this matter. Villalobos Evidence Aff. ¶ 4. Villalobos further avers, in his Supplemental Affidavit [DE 45-1], attached as Exhibit A to Platon's Reply ("Supp. Villalobos Aff."), that a court in Panama would have discretion whether or not to hear this case, and would not be bound to decline jurisdiction pursuant to Article 1421-J. Supp. Villalobos Aff. ¶ 10.

Plaintiff also argues that even if a court in Panama would hear its case, Panama is still an inadequate forum because Plaintiff would be deprived of full remedies in Panama such as punitive damages or piercing the corporate veil to hold Platon personally liable for Italkitchen's breach of its indemnity contract. Platon Opp. at 10; Del Real Decl. ¶¶ 8-9. However, one of the cases Plaintiff cites throughout its opposition, states that a forum is adequate when "the parties will not be deprived of all remedies or treated unfairly . . . *even though they may not enjoy the same benefits as they might receive in an American court*." Raytheon Eng'rs & Constructors, Inc. v. HLH & Assocs. Inc., No. 97-20187, 1998 WL 224531, at *2 (5th Cir. Apr. 17, 1998). (emphasis added). Thus, Panama cannot be considered an inadequate forum merely because Plaintiff would be unable to seek punitive damages or pierce the corporate veil.[5]

Given that a related matter is already pending in Panama which challenges the

_____

[5]     Furthermore, as discussed in section C, *infra*, because the Court finds that Panamanian law governs this dispute, Plaintiff would not be entitled to these remedies even if the dispute were to remain in this Court. See also Platon Reply at 5-6.

very obligations at the center of the Indemnity Agreements, and Villalobos' assertion
that a Panamanian court would have discretion whether or not to hear Plaintiff's case,
the Court finds that it is unclear that Article 1421-J would deny Plaintiff the opportunity
to try its case in Panama, as Plaintiff contends.  Furthermore because Defendants
Platon and Italkitchen have both consented to jurisdiction in Panama, the Court finds
that Panama is an available forum.  Affidavit of Ted Platon and Italkitchen Consenting
to Jurisdiction in the Republic of Panama, attached as Exhibit B to Platon's Reply [DE
45-2] ("Jurisdiction Aff."); Aldana, 578 F.3d at 1290.  Thus, the Court concludes that
Panama is an available and adequate forum.[6]

### C. The Public and Private Factors Favor Dismissal.

When considering a motion to dismiss for *forum non conveniens*, the Court must
weigh the advantages and disadvantages of each prospective forum.  Tazoe, 631 F.3d
at 1331 (citing Piper Aircraft Co., 454 U.S. at 241 n.6).  The public factors the Court
must consider are: "'the relative ease of access to sources of proof; availability of
compulsory process for attendance of willing, witnesses; possibility of view of premises,
if view would be appropriate to the action; and all other practical problems that make
trial of a case easy, expeditious, and inexpensive.'"  Piper Aircraft Co., 454 U.S. at 241
n.6 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  The public factors
include "the administrative difficulties flowing from court congestion; the 'local interest in
having localized controversies decided at home'; the interest in having the trial of a

---

[6]     As explained in Section D, *infra*, the Court conditions dismissal on a
Panamanian court's willingness to accept the suit.  If a Panamanian court found that it
lacked jurisdiction pursuant to Article 1421-J, Plaintiff could move to reinstate its suit in
this Court.

diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated form with jury duty." Piper Aircraft Co., 454 U.S. at 241 n.6 (citing Gilbert, 330 U.S. at 509). A trial court "look[s] at the private interests first, and then if the balance of the private interests are found to be in equipoise or near equipoise, it will determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum." Wilson v. Island Seas Inv., Ltd., 590 F.3d 1264, 1271 (11th Cir. 2009) (internal citations and quotations omitted). Here, application of both the private and public factors strongly favors dismissal.

1. Private Interest Factors.

The first private interest factor, relative ease to sources of proof, supports trial of this case in Panama. Defendants contend that Panama offers superior access to sources of proof. After considering the arguments of the parties, the Court agrees. The events giving rise to this action occurred in Panama. Italkitchen Motion at 1. The majority of the witnesses are located in Panama. Id. at 2. "Except for Defendants themselves, all the sources of proof are in Panama and have no relationship with the United States or Florida." Platon Motion at 9; Italkitchen Motion at 10-11. Although Plaintiff argues that Defendants' statements about the sources of proof are not supported "by any competent record evidence," Platon Opp. at 12, in rebuttal to this argument, Platon submitted an affidavit which identifies 12 Panamanian-based witnesses Defendants would depose or call at trial. Villalobos Evidence Aff. ¶¶ 5-6. Additionally, this affidavit identifies various correspondence and documents, all located in Panama, that are essential to litigation of this case. Id. ¶¶ 10-11. Thus, the Court

11

finds that Defendants have established that Panama offers superior access to sources of proof.

The second private interest factor, availability of compulsory process for attendance of witnesses, also supports trial of this case in Panama. Defendants contend that the vast majority of witnesses in this case are located in Panama, outside the subpoena power of this Court. Platon Motion at 9; Italkitchen Motion at 11. Defendants' Rule 26(a) Initial Disclosures list 17 individuals who may support Defendants' defenses, 16 of whom are located in Panama. Defendants' Rule 26(a) Initial Disclosures, Exhibit D to the Platon's Reply [DE 45-4] ("Rule 26(a) Initial Disclosures") ¶ 1. Defendants have also represented that they may seek to implead Opcorp-Arsesa International, Inc., a Panamanian corporation, to this case. Villalobos Evidence Aff. ¶ 4; Complaint ¶ 12 (identifying Opcorp-Arsesa International, Inc. as a Panamanian corporation).

The Court agrees with Defendants that witnesses crucial to this case are located in Panama, a fact supported by Plaintiff's very own Complaint. In its Complaint, Plaintiff alleges that Alberto Villageliu, Gilberto Vega, Anayansy Diaz, Ikaru Uno, Raul Gutierrez, and Carlos Stagg were present at the March 4, 2009 meeting where Defendant Platon allegedly made misrepresentations to induce Plaintiff to underwrite the bonds. Complaint ¶ 18.[7] Because these individuals, and others Defendants have identified as potential witnesses, are outside the subpoena power of this Court, the Court could not

---

[7]     Each of these individuals is also listed as potential witnesses in the affidavit and/or Rule 26(a) Initial Disclosures. See Villalobos Evidence Aff. ¶¶ 5-6; Rule 26(a) Initial Disclosures ¶ 1.

compel their attendance at trial.[8] Even if witnesses consented to appear before this Court, their travel arrangements would be costly. By contrast, these witnesses are within the subpoena power of Panamanian courts and costly travel arrangements would be unnecessary. See Villalobos Aff. ¶ 15. The Court also does not have jurisdiction over the potential Panamanian third-party defendant, Opcorp-Arsesa International, Inc. Thus, this factor also supports trying this case in Panama. See Piper Aircraft Co., 454 U.S. at 259 ("The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland.").

The third private interest factor, possibility of a view of the premises, also favors Panama. If the need for a view of the Trump Ocean Club International Hotel & Tower development became necessary, not outside the realm of possibility given that this litigation involves a development project, such view would necessarily take place in Panama. Thus, this factor also favors resolution of this case in Panama.

The fourth and final private interest factor, which requires the Court to consider all other practical problems that make trial of a case easy, expeditious, and inexpensive, supports trial of this case in Panama. Potential language barriers for Spanish-speaking witnesses and the need to translate documents from Spanish to

---

[8]     Although Plaintiff has offered to make its employees "available . . . as necessary and proper," Plaintiff has not offered to make other witnesses available. See Platon Opp. at 14 n.11; Leon, 251 F.3d at 1315 (noting that plaintiffs' offer to appear in district courts and assume the cost of deposing witnesses in Ecuador "did not extend to guaranteeing the presence in the United States of [key witness] non-plaintiffs who could verify whether in fact a plaintiff had been injured by the crash, and the degree alleged").

English make it more efficient to resolve this suit in Panamanian courts where Spanish is the official language. See Tazoe, 631 F.3d at 1333 (noting in support of a dismissal on *forum non conveniens* grounds that "a trial in the Southern District of Florida will cause significant translation costs. The multiple reports from Brazilian investigators are in Portugese, as are virtually all of the family members' documents that relate to damages. Many other documents would have to be translated into English, along with the testimony of several witnesses."). Given these language-related impediments, this case is most easily, expeditiously, and inexpensively tried in Panama.[9]

2. Public Interest Factors.

The public interest factors also strongly support resolving this case in Panama.[10] Given the vast number of cases pending in the Southern District of Florida, the administrative difficulties flowing from court congestion, favor trying this case in Panama. Plaintiff concedes that it "understands and acknowledges that this Court's load is a heavy one and that judicial resources are limited." Italkitchen Opp. at 19. The

---

[9] Some courts have described the fourth public interest factor as "enforceability of a judgment." Wilson, 590 F.3d at 1270. This public interest factor also supports trial of this case in Panama. As Plaintiff points out in its opposition, there is a Florida statute which permits plaintiffs to domesticate and execute foreign judgments. Platon Opp. at 16; Uniform Foreign Money-Judgments Recognition Act, Fla. Stat. §§ 55.601-55.607. Thus, enforceability of a judgment also weighs in favor of Panama because Florida law explicitly provides a mechanism to enforce a Panamanian judgment against Florida residents.

[10] Although the Court finds that the private interest factors overwhelming favor dismissal, the Court has nonetheless also analyzed each of the public interest factors even though it is not required to do so. See Aldana, 578 F.3d at 1298 (finding that because the district court had concluded that the private interest factors overwhelmingly favored dismissal, it was not necessary to analyze the public interest factors).

14

Court rejects Plaintiff's argument that "there is evidence that the court system in Panama is massively backlogged" because this contention is unsupported with specific facts about the length of delay.  Id.; see Leon, 251 F.3d at 1312 (finding that a district court may reject plaintiff's general argument that foreign forum suffers from serious corruption or delay where the allegations are insubstantially supported).

Second, Panama clearly has a superior interest in resolving this dispute than the United States.  The Eleventh Circuit has held that "it is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil."  Tazoe, 631 F.3d at 1334 (internal quotations and citations omitted); see also Piper Aircraft Co., 454 U.S. at 260 (finding that America's interest in a foreign airplane accident "is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried" in the United States); The Scotts Co., 942 So. 2d at 903 (finding that "Florida has no interest in adjudicating the dispute of a Panama corporation whose property was injured in Panama by events taking place" in Panama).  Here, the Plaintiff is a Panamanian corporation which suffered an injury related to business transactions which occurred largely in Panama.  Platon Motion at 11.  Additionally, there is already related litigation pending in Panama.  Id.; Villalobos Evidence Aff. ¶ 4; Villalobos Aff. ¶ 12.  Panama's interest in resolving this dispute, therefore, is greater than the United States' interest.

The third and fourth public interest factors require the Court to assess which jurisdiction's law will apply.  Because the Court concludes that Panamanian law will likely govern all counts of Plaintiff's complaint, both the third and fourth public interest factors favor trial of this case in Panama.  The need to apply foreign law, especially a

foreign law with which the court is unfamiliar, favors dismissal. Piper Aircraft Co., 454 U.S. at 260 (noting that in Gilbert the Court found that the need to apply foreign law pointed towards dismissal and upholding dismissal even if American law applied because all the other public interest factors favored trial in Scotland). Avoidance of a conflict of laws analysis also favors dismissal. Tazoe, 631 F.2d at 1334 (finding that likelihood that Brazilian law would apply to plaintiffs' claims favored dismissal to avoid a conflict of laws or application of foreign law). Here, Defendants contend that Panamanian law applies to all Plaintiff's claims. Platon Motion at 16; Italkitchen Motion at 13. Plaintiff, on the other hand, argues that Florida law applies to the breach of contract claim against Italkitchen and that "the fact alone that Panama law may apply is insufficient to support dismissal of the case." Platon Opp. at 16-17.[11]

A federal court sitting in diversity must apply the choice of law rules of the forum state. Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996). Accordingly, Florida choice of law rules govern. For tort claims, Florida applies the most significant relationship test set forth in Restatement (Second) of Conflict of Laws § 145. Trumpet Vine Inv., N.V., 92 F.3d at 1116. Section 145 provides that:

> (1) the rights and liabilities of the parties with respect to an

---

[11]     It could be surmised from this argument that Plaintiff concedes that Panamanian law applies to its fraud and breach of contract claims against Platon. Plaintiff provides zero support for its argument that "because Florida law governs the breach of contract against Italkitchen, it also applies to the claim against Platon to hold him personally responsible for Italkitchen's breach of the Indemnity Agreement under alter ego principals." Platon Opp. at 17. In the Complaint, the breach of contract claim against Platon is based on the separate indemnity agreement Platon signed. Complaint ¶¶ 43-49.

issue in tort are determined by the local law of the state
which, with respect to that issue, has the most significant
relationship to the occurrence and the parties under the
principles stated in § 6.[12]

(2) Contacts to be taken into consideration in applying the
principles of § 6 to determine the law applicable to an issue
include:
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury
> occurred,
>
> (c) the domicile, residence, nationality, place of
> incorporation, and business of the parties, and
>
> (d) the place where the relationship, if any, between
> the parties is centered.

Restatement (Second) of Conflict of Laws §145 (1971).  Plaintiff alleges that it relied on

representations Defendant Platon made at a March 4, 2009 meeting which took place

in Panama.  Complaint ¶ 42.  The damages Plaintiff suffered occurred in Panama.

Because meetings between the parties occurred in Panama and the parties'

agreements were related to a development project in Panama,  Panama was clearly the

---

[12]      The factors set forth in § 6 include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the
> relative interests of those states in the determination of the
> particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to
> be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

17

center of the parties' relationship.  Although Platon is a Florida resident, he engaged in extensive business operations in Panama.  Accordingly, the law of Panama applies to Plaintiff's fraud claim against Platon because Panama has the most significant relationship with the claim.

For contract claims, Florida applies the lex loci contractus rule for choice of law determinations.  Trumpet Vine Inv., N.V., 92 F.3d at 1119.  Under this rule, issues regarding the validity and substantive obligations of contracts are governed by the law of the place where the contract is made.  Id.  A contract is made where the last act necessary to complete the contract is performed.  Id.  Issues regarding performance of a contract are governed by the law of the place where the contract is to be performed.  Hammett v. Am. Bankers Ins. Co. of Fla., 203 F.R.D. 690, 700 (S.D. Fla. 2001).  Because Plaintiff has brought breach of contract claims against both Defendants, the law of the place where the contracts were to be performed governs.[13]

The plain language of the indemnity agreements establish that Panama is the place of performance.[14]  The Italkitchen Indemnity Agreement provides that the

---

[13]     Because this Court finds that the private interest factors overwhelmingly favor dismissal and application of choice of law principals indicate that Panamanian law applies, the Court declines to analyze Defendants' contention that the choice of law provision in the Trust Agreement, attached as Exhibit A to Plaintiff's Complaint [DE 1-4], requires that Panama law apply to the Indemnity Agreements.  See Italkitchen Motion at 4-5; Platon Motion at 3-5.  Furthermore, the very fact that this case necessitates such a complicated choice of law analysis weighs in favor of dismissal.  See Tazoe, 631 F.2d at 1334.

[14]     Plaintiff contends that because the Italkitchen Indemnity Agreement was executed in Miami, Florida law governs the breach of contract claim against Italkitchen.  Italkitchen Opp. at 14.  Plaintiff cites Fred Teitelbau Construction Co. of Florida, Inc. v. Santa Fe Development Corp. for the proposition that "under controlling Florida law the legal obligations of an indemnity agreement are governed by the law of the place where

"PRINCIPAL shall upon demand deposit current funds with SURETY in an amount sufficient to cover any contingent loss, liability or expense in connection with any Insurance Bond (s) executed or procured by SURETY." Italkitchen Indemnity Agreement ¶ 2, Exhibit C to Plaintiff's Complaint [DE 1-6].[15]   The Platon Indemnity Agreement contains a substantially similar provision. Platon Indemnity Agreement ¶ 2, Exhibit B to Plaintiff's Complaint [DE 1-5].  Because the indemnity agreements require Defendants to complete their performance in Panama by depositing funds with Plaintiff, a Panamanian corporation, Panamanian law governs.  Accordingly, dismissal is warranted to avoid application of foreign law and a conflict of laws analysis.

As to the fifth and final public interest factor, the Court finds that it is unfair to burden jurors from South Florida with jury duty to resolve a  dispute centered in Panama.  As discussed above, this case involves a Panamanian plaintiff injured in Panama.  It is unfair for Florida citizens to devote their valuable time to resolve a dispute which properly belongs in Panama.

### D. The Court Conditions Dismissal on Plaintiff's Ability to File Suit in Panama.

The final part of the forum non conveniens analysis requires the Court to assess

------

the contract was made." 462 So. 2d 560, 561 (Fla. Dist. Ct. App. 1985).  Because Plaintiff has not challenged the validity of the indemnity agreement, but instead brings a breach of contract claim against Italkitchen, the Court believes that the law of the place where performance was due, not where the contract was made, governs.  Hammett, 203 F.R.D. at 700.  However, even accepting Plaintiff's argument as true, Florida law would apply only to Plaintiff's breach of contract claim against Defendant Italkitchen.  Because Panama law would apply to two out of Plaintiff's three claims, this factor would still favor dismissal.

[15]    The Italkitchen Indemnity Agreement defines American Assurance Corp., the successor in interest of Plaintiff, as the surety and Italkitchen International, Inc., as the principal.  See Italkitchen Indemnity Agreement.

whether Plaintiff can reinstate its suit in Panama without undue inconvenience or prejudice. Tazoe, 631 F.3d at 1330.   In their reply memoranda, both Defendants argue that Plaintiff can reinstate its suit in Panama. Platon Reply at 10; Italkitchen Reply at 10. Additionally, both Defendants have consented to jurisdiction in Panama to resolve this case. See Jurisdiction Aff.  The Defendants also state that "[a]ny and all claimed impediments to jurisdiction in Panama could be cured by conditional dismissal." Platon Reply at 10; Italkitchen Reply at 10. The Court agrees.  Numerous state and federal courts have conditioned dismissal on the ability of a party to reinstate its suit in a foreign jurisdiction. See Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 607 (10th Cir. 1998) (conditioning dismissal on consent to reinstatement if jurisdiction in France was declined); Aguinda, 142 F. Supp. 2d at 546 (finding argument that Ecuador courts would deny plaintiff jurisdiction doubtful, but conditioning dismissal as a safeguard); Rajamannan, 793 N.W. 2d at 134 (holding that the district court may dismiss on forum non conveniens grounds even though the adequacy of the forum is not absolutely certain, if the dismissal is conditional).

In fact, the Eleventh Circuit has held that the uncertainty of whether a foreign forum may hear a case is not a barrier to a *forum non conveniens* dismissal: "Nor is the alleged uncertainty over Law No. 55 an obstacle to dismissal; the District Court would presumably reassert jurisdiction over the case in the event that jurisdiction in the Ecuadorian courts is declined." Leon, 251 F.3d at 1313.  In Leon, the Eleventh Circuit modified the district court's order of dismissal to provide that jurisdiction could be reinstated in the United States if the Ecuadorian court refused to hear the case. Id. at 1316.  Thus, because Defendants have consented to jurisdiction in Panama and the

20

Court will allow Plaintiff to reinstate its case in this Court if a Panama court refuses jurisdiction, the Court hereby dismisses Plaintiff's Complaint based on *forum non conveniens*.

III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Italkitchen International Inc.'s Motion to Dismiss Plaintiff's Complaint [DE 11] is **GRANTED**;

2. Defendant Ted Platon's Motion to Dismiss Plaintiff's Complaint [DE 16] is **GRANTED**;

3. The above-captioned case is hereby **DISMISSED WITHOUT PREJUDICE**;

4. The Clerk shall **CLOSE** this case and **DENY** all pending motions as **MOOT**; and

5. Plaintiff may move to reopen this case if a court in Panama refuses jurisdiction over its claims.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida, this day 9th day of November 2011.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.

21